NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BURTON HIRSCHMAN, As Executor of the Estate of Steven Hirschman, on behalf of himself and others similarly situated, | : : : : : | |
| Plaintiff, | : : | No. 21cv19251 (EP) (JRA) |
| v. | : : | OPINION |
| DCM SERVICES, LLC, | : : : | |
| Defendant. | : : | |

**PADIN, DISTRICT JUDGE**

Plaintiff/debtor Burton Hirschman, as Executor of the Estate of Steven Hirschman ("Plaintiff" and "Steven"), sued Defendant/debt collector DCM Services, LLC ("DCM") on behalf of a putative class, alleging that DCM violated various Fair Debt Collection Practices Act ("FDCPA") provisions. DE 1 ("Complaint"). DCM moves, pursuant to Fed. R. Civ. P. 12(c), for judgment dismissing the complaint. DE 20. For the reasons below, this Court will grant the motion and dismiss the Complaint.

**I.      BACKGROUND**[1]

This action stems from Steven's alleged personal debt to Omnicare of Edison ("Omnicare"), later assigned to DCM. Complaint ¶¶ 17-24. About two months after Steven's death, Plaintiff received a one-page, two-sided dunning letter from DCM directed to Plaintiff. DE

---

[1] As required on motions to dismiss, this Court accepts as true all well-pled factual allegations in the Complaint.

20-3 at 17 (the "Letter"). The Letter contained two passages which Plaintiff alleges to have violated the FDCPA. First, the Letter informed Plaintiff that

> As of the date of this letter, the Estate owes an unpaid balance of $5079.38. Please note that the unpaid balance may change based on insurance payments or adjustments or other invoices not yet billed. We will inform you of any balance adjustments.

DE 20-3 at 18 (the "Balance Language").

Second, the Letter stated:

> When you provide a check as payment, you authorize us to either use the information from the check to make a one-time electronic transfer from that bank account, or to process the payment as a check transaction. When we use information from the check to make an electronic funds transfer, funds may be withdrawn from that bank account as soon as the same day we receive payment, and you will not receive the check back.

*Id.* at 19 (the "Check Language").

The Complaint alleges one count encompassing violations of FDCPA subsections 15 U.S.C. §§ 1692e, 1692(e)(2)(A); 1692e(5); 1692(f); and 1692g(a)(1). Complaint ¶¶ 50, *et seq*. The Complaint alleges that the notices were likely sent to other prospective class members. *Id.*

## II. LEGAL STANDARD

A Rule 12(c) motion made be made "after the pleadings are closed but within such time as not to delay the trial[.]" When, as here, a Rule 12(c) motion alleges a plaintiff's failure to state a claim upon which relief can be granted, the standard is the same as a Rule 12(b)(6) motion to dismiss. *Turbe v. Government of Virgin Islands,* 938 F.2d 427, 428 (3d Cir. 1991).

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible

2

on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).

In evaluating a complaint's sufficiency, district courts must separate the factual and legal elements. *Fowler*, 578 F.3d at 210-11. A court "must accept all of the complaint's well-pleaded facts as true." *Id.* at 210. A court, however, does not credit labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).

## III.   ANALYSIS

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021).

"Because the FDCPA is a remedial statute," effecting its purpose requires construing its language broadly. *Dotson v. Nationwide Credit, Inc.*, 828 F. App'x 150, 152 (3d Cir. 2020). "Courts routinely employ a 'least sophisticated debtor' standard when deciding if debt collection violates the FDCPA." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). "[W]hile the least sophisticated debtor standard protects naive consumers, it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of

reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.*; *see also LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1194 (11th Cir. 2010) ("'[T]he least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world ...." (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir. 1993)); *Oppong v. First Union Mortg. Corp.,* 566 F. Supp. 2d 395, 402 (E.D. Pa. 2008) (same).

### A. 1692g notice (the amount of the debt)

The Complaint alleges that the Balance Language violates § 1692g(a)(1) by "[t]hreatening that the Omnicare obligation was subject to increase due to other Omnicare invoices not yet billed," leaving Plaintiff "confused about the amount actually owed to the creditor." Complaint ¶¶ 39-40. DCM argues that this portion of the Complaint fails to state a claim. DE 20-1 at 7.

Setting a guidepost for "balance due" analysis is Judge Posner's seminal opinion in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 874 (7th Cir. 2000). *Miller*'s dunning letter provided that the "unpaid principal balance" of the loan was $178,844.65, subject to "accrued but unpaid interest, unpaid late charges, escrow advances or other charges for preservation and protection of the lender's interest in the property, as authorized by your loan agreement. The amount to reinstate or pay off your loan changes daily. You may call our office for complete reinstatement and payoff figures." *Id.* at 875.

*Miller* held that this did not comply with the FDCPA because the "unpaid principal balance" was only part of the debt. *Id.* Thus, despite the additional language and invitation to call the debt collector for an exact balance, the letter violated § 1692g's requirement to list "the amount of the debt." *Id.* To provide future guidance, Judge Posner fashioned optional "safe harbor" formula which, provided it contained accurate information unobscured by additional language, would satisfy § 1692g's duty to state the amount of debt:

4

> As of the date of this letter, you owe $___ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1–800– [phone number].

*Id.* at 876; *see also Hopkins v. Advanced Call Ctr. Techs., LLC,* No. CV2006733, 2021 WL 1291736, at *3 (D.N.J. Apr. 7, 2021) (suggesting the following plain language notice: "The total balance is $347.48. If you pay $175 now, we'll stop collection activities, but you will still owe us the remaining balance of $172.48. ($347.48 minus $175 equals $172.48.) We'll bill you for that remaining balance later.").

Like the *Miller* "safe harbor" language, the Balance Language here states the amount due and explains why it may change, including adjustments in Plaintiff's favor lowering the balance. Indeed, the Language augments the *Miller* language by assuming an affirmative obligation to inform Plaintiff of any balance adjustments:[2]

> As of the date of this letter, the Estate owes an unpaid balance of $5079.38. Please note that the unpaid balance may change based on insurance payments or adjustments or other invoices not yet billed. We will inform you of any balance adjustments.

Courts have held that similar language does not violate § 1692g. For example, in *Dotson*, the Third Circuit panel rejected the plaintiff's argument that language qualifying the balance "as of the date of this letter" could confuse a consumer into believing that the amount of debt could change. 828 F. App'x at 152. Indeed, Plaintiff concedes that other judges of this Court found that similar notices did not violate § 1692g(a)(1). DE 22 at 16; *Akegnan v. Trinity Fin. Servs., LLC*, No. CV22015761, 2021 WL 5984896, at *1 (D.N.J. Dec. 6, 2021) ("the total amount of the debt

---

[2] The Letter also, like the *Miller* language, provides DCM's contact information if Plaintiff desired clarification.

is $259,392.55 as of NOVEMBER 25, 2019" and further advising that "additional interest and fees may have accrued since NOVEMBER 25, 2019, thereby increasing the amount of the debt" did not violate § 1692g(a)(1); *Rock v. Greenspoon Marder, LLP*, No. 20-CV-3522, 2021 WL 248859, at *7 (D.N.J. Jan. 26, 2021) ("as the date of this letter, the total amount of the debt that you owe is $128,655.61. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.").

Likewise, conditional language adding that "[a]mounts may increase or decrease due to application of payments and/or adjustments. Please call…for a payoff amount" was also held not to violate § 1692g. *Echols v. Premiere Credit of N. Am., LLC*, No. CV 19-4125, 2021 WL 426737, at *1 (E.D. Pa. Feb. 8, 2021) (granting motion to dismiss), *reconsideration denied*, No. CV 19-4125, 2021 WL 5444771 (E.D. Pa. Mar. 9, 2021), and *appeal dismissed sub nom. Echols v. Premiere Credit of N. Ameri,* No. 21-1534, 2021 WL 7617722 (3d Cir. Oct. 21, 2021).

Indeed, language *more* confusing than the Balance Language here has been permitted. *Hopkins v. Advanced Call Ctr. Techs., LLC*, No. CV2006733KMESK, 2021 WL 1291736, at *2 (D.N.J. Apr. 7, 2021) (holding that "the least sophisticated consumer" would understand the difference between the "balance" and the "amount 'now due'" until the next bill arrives); *Untershine v. Encore Receivable Mgmt., Inc.,* No. 18-CV-1484, 2019 WL 3766564, at *1, 5 (E.D. Wis. Aug. 9, 2019) (permitting the following: "Your Total Account Balance and Amount Now Due on the day you pay may be greater than the amounts listed above as a result of finance charges, late fees or other fees imposed on your account from day to day as outlined in the terms of your account and your account agreement.").

Conversely, courts have found that "balance due" language violates the FDCPA when, for example, the language fails to inform a debtor of the balance on a certain date and the possibility

6

of adjustment. *See, e.g., Dragon v. I.C. Sys., Inc.*, 483 F. Supp. 2d 198, 203 (D. Conn. 2007) (granting summary judgment to debtor/plaintiff where it was not clear from the "balance due" language when the balance was calculated and that it was subject to periodic adjustment); *McDowall v. Leschack & Grodensky, P.C.,* 279 F. Supp. 2d 197 (S.D.N.Y. 2003) (finding FDCPA violation where dunning letter included exact amount of principal balance, but stated that the balance included an indeterminate amount of interest, and advised that debtor was responsible for attorney fees, without explaining that attorney fees were not part of debt owed).

One such case, cited by Plaintiff, is *Reeseg v. Gen. Revenue Corp.*, 14-CV-08033, 2015 WL 4525869, at *3 (D.N.J. July 27, 2015). To the extent that *Reeseg* held to the contrary, this Court distinguishes it for the same reason that the *Echols* court did: because the Balance Language, like the *Echols* notice (and unlike the *Reeseg* notice) indicated that "adjustments" might be made that increase *or* decrease the amount owed. *Echols*, 2021 WL 426737, at *4 ("'adjustments' is most naturally understood as the posting of credits and debits to an account."). As DCM highlights, Plaintiff concedes the possibility of adjustments. DE 22 at 16-17 ("insurance payments covering medical services…rendered…to…Steven…may actually lower the amount due"). That was indeed a possibility when DCM sent the letter, and precisely its point; unlike, for example, credit card debt, an insurance company may (and often will) pay medical expenses. The Balance Language may not have been a model of clarity, but nevertheless was sufficiently clear even to the least sophisticated consumer. Accordingly, this Court will grant judgment in favor of DCM dismissing Plaintiff's § 1692g claim.

  **B.**  **1692f (post-dated checks)**

The Complaint also alleges that the Check Language violated 15 U.S.C. § 1692f(4), which prohibits "depositing or threatening to deposit any postdated check or other postdated payment

7

instrument prior to the date on such check or instrument." As a reminder, the Check Language was:

> When you provide a check as payment, you authorize us to either use the information from the check to make a one-time electronic transfer from that bank account, or to process the payment as a check transaction. When we use information from the check to make an electronic funds transfer, funds may be withdrawn from that bank account as soon as the same day we receive payment, and you will not receive the check back.

DCM moves to dismiss the claim, arguing that the Check Language is simply a required electronic fund transfer ("EFT") disclosure.[3] DE 20-1 at 4-5. Plaintiff contends that the least sophisticated consumer could reasonably infer the Check Language as a threat to deposit a postdated check. Because the Check Language could not be interpreted even by the least sophisticated debtor as a "threat[] to deposit" a postdated check early, this Court finds that this portion of the Complaint fails to state a claim.

Like 1692g claims, courts require an "objective analysis that takes into account whether the 'least sophisticated debtor' would likely be misled by a communication." *Donohue v. Quick Collect*, 592 F. 3d 1027, 1030 (9th Cir. 2010); *Delfonce v. Eltman L., P.C.*, 712 F. App'x 17, 19 (2d Cir. 2017) (analyzing § 1692e, 1692f, and 1692g claims under "least sophisticated consumer" standard); *Nyasimi v. Durham & Durham, LL*P, No. 1:17-CV-1249, 2017 WL 8221399, at *3 (N.D. Ga. Nov. 17, 2017), *report and recommendation adopted*, No. 1:17-CV-1249, 2017 WL 8222330 (N.D. Ga. Dec. 6, 2017) (collecting Eleventh Circuit precedent holding that §§ 1692e, 1692f, and 1692g claims are analyzed under the "least sophisticated consumer" standard). This

---

[3] As Plaintiff highlights, DCM briefly argues that Plaintiff "lacks standing with respect to this claim," but does not elaborate further. DE 20-1 at 10. To the extent that DCM does not elaborate upon standing in its opening or reply brief, I need not address that issue.

standard is designed to protect consumers of "below average sophistication or intelligence or those who are naive." *Gonzales v. Arrow Financial Services, LLC*, 660 F. 3d 1055, 1062 (9th Cir. 2011).

DCM's interpretation of the provision as a "descr[iption of] the amount of time that the funds will remain in the consumer's bank account after the transfer is processed" is equally idiosyncratic. Distilled, the Check Language informs its reader, "be warned: if you send us a check, and we use the checking and routing numbers to withdraw money from your account, the money will leave your account on the same day." Thus, while DCM's argument is technically correct, it still does not address whether it is a "deposit or threat[] to deposit" a postdated check.

That said, nor does Plaintiff's claim "implicate the policy concerns underlying the FDCPA's restrictions on postdated checks and payment instruments." *Shine v. Brake Stop & Auto Repair, LLC*, No. 14-CV-02962, 2015 WL 11990932, at *4 (S.D. Cal. May 5, 2015) (debit authorization was not a postdated payment, but pre-authorization to make real-time withdrawals on particular dates). Plaintiff's citation to *Norman v. Allied Interstate, LLC*, 310 F. Supp. 3d 509, 519–20 (E.D. Pa. 2018) is inapposite. There, a notice that a mailed check "would be debited immediately and would not be returned" was held to plausibly allege a violation of a debtor's right to validate a debt under 15 U.S.C. § 1692g(b). *Id.* But Plaintiff alleges that the Check Language violates § 1692f, not 15 U.S.C. § 1692g.

The FDCPA's full historical context reveals that §1692f's postdated check provisions (subsections two through four) were meant to curb a specific abusive practice: debt collectors' misuse of postdated checks. Collectors would ask for checks and then cash them, knowing that the checks would bounce, then threaten the debtor with criminal prosecution to prompt an immediate payment that the debtor could not afford (and usually had to borrow from elsewhere). *See* 91 Stat. 874, *The Debt Collection Practices Act, Subcomm. on Consumer Affairs of the Comm. on Banking,*

*Currency and Housing* (March 30, 31; April 6, 7, and 8, 1976) (Testimony of Frank Ennis, Master Sergeant, US Army Band) (debtor, upon the debt collector's request, sent postdated checks as a payment plan to "close the account," but collector cashed the postdated check a week early, knowing the check would bounce, then sent the bounced check back to debtor accompanied by a barely-veiled threat: a copy of the "bad-check law" associated with extra fines and jail time).

Thus, there is no support for Plaintiff's claim that DCM "chose to confuse or mislead Plaintiff about any postdated checks provided as payment by threatening to deposit/withdraw the funds from any such postdated payment check prior to the date on said check[.]" DE 22 at 16. The Check Language's text, viewed in the context of the FDCPA's language and history, does not support that interpretation. Rather, as DCM appears to argue, the Check Language simply reflects some tension between DCM's good-faith attempt to comply with EFT regulations, not an exercise of the unsavory practices which the FDCPA sought to bar or something that even the least sophisticated consumer could construe as a solicitation of, or a threat to cash, a post-dated check. Accordingly, DCM is entitled to judgment dismissing this claim.

    C.    **1692e (general allegations of unfair practices)**

Finally, the Complaint also generally alleges that DCM violated various provisions of 15 U.S.C. 1692e through its use of various false or misleading representations. Complaint ¶¶ 54, *et seq.* These are not explained further in Plaintiff's opposition, which, as DCM argues, is itself grounds for dismissal. *Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count.").

Although courts must accept all well-pled factual allegations, threadbare recitals of the elements of a cause of action supported only by conclusory statements do not suffice. *Creel v.*

*Rowan Univ.*, No. CV 16-2883 (JBS/AMD), 2017 WL 2734709, at *2 (D.N.J. June 26, 2017). In the absence of any argument in opposition, and because it is based on the same allegations (the Check and Balance Language) dismissed above, the Court will also dismiss this claim.

### IV.   CONCLUSION

For the reasons above, this Court will grant DCM's motion and dismiss the Complaint. This Court find it implausible, but not impossible, that Plaintiff could allege additional facts which might state a claim. Accordingly, should Plaintiff wish to amend the Complaint, that amendment must be filed within 21 days.

An appropriate order follows.

*[Signature]*

_____
EVELYN PADIN, U.S.D.J.

At: Newark, New Jersey
Dated: 8/11/2022